UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:19-CR-55-TAV-HBG-2 |
| JACKSON BROWN, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge H. Bruce Guyton on July 15, 2021 [Doc. 100]. The R&R addresses defendant's Motion to Suppress [Doc. 81]. The government responded [Doc. 84], and Judge Guyton held a hearing on the motion on February 19, 2021 [Doc. 85]. After the hearing, defendant filed a post-hearing brief [Doc. 92], and the government responded [Doc. 93]. Judge Guyton then issued the R&R [Doc. 100], recommending that the Court deny defendant's motion to suppress. Defendant has filed objections to the R&R [Doc. 101], the government has responded [Doc. 105], and the matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, the Court will **OVERRULE** defendant's objections [Doc. 101], **ACCEPT IN PART** the R&R[1] [Doc. 100], and **DENY** defendant's Motion to Suppress [Doc. 81].

---

[1] As discussed *infra*, the Court declines to adopt Section IV.C of the R&R [Doc. 100, pp. 22–24], addressing what evidence would be subject to suppression, if suppression was warranted, because the Court finds such analysis unnecessary in light of the magistrate judge's well-reasoned conclusion that suppression is not, in fact, warranted.

## I. Background

The Court presumes familiarity with the facts of this case and will only recite facts necessary to the determination of the instant motion. Moreover, the Court notes that the parties do not object to the factual basis in the magistrate judge's R&R, and therefore, the Court will adopt the following facts from the R&R [Doc. 100].

Defendant is charged, along with two codefendants, with carjacking (Count One), Hobbs Act Robbery (Count Four), and brandishing a firearm in furtherance of these offenses (Counts Two & Five), as well as an individual count of being a felon in possession of a firearm and ammunition (Count Three). These charges arise out of the alleged robbery of Angelleigha Qualls and Patrick Thompson in their apartment at gunpoint in the early morning of November 24, 2018. Defendant and his codefendants allegedly took money, jewelry, and other items, and fled in Qualls's 2013 Ford Fusion. Later that morning, defendant was arrested at the home of his father, Jackie Hickey, who subsequently consented to multiple searches of his home.

The magistrate judge made the following factual findings, which, as noted previously, are not the subject of any party's objections. In the early morning of November 24, 2018, Detective Randy Heidle, then of the Rockwood Police Department, was called to investigate an armed robbery and theft of a vehicle, from Thompson and Qualls. The perpetrator was an unknown male assisted by Coy Potter and Jaret Axell, both of whom were known to the victims. The victims reported that the perpetrator took money and jewelry and fled in Qualls's car. Law enforcement tracked the car through an internal

2

tracking device installed by the manufacturer and identified the perpetrator male as defendant. The car was located at an apartment complex about one block from the residence of defendant's father, Hickey. Officers arrested defendant in the back bedroom of Hickey's home, after obtaining Hickey's consent to enter and arrest defendant.

Around 7:35 a.m., and shortly after defendant's arrest, Detective Heidle reported to the scene of the abandoned car to process it for evidence. Detective Heidle searched the car with the victim's permission and found money in the driver's floorboard and a gun in the center console. Detective Heidle then went to Hickey's residence, accompanied by Captain Pittman, and a local officer. The local officer recognized Hickey as defendant's father. Detective Heidle, who was dressed in plain clothes, was aware that Hickey was partially deaf and that he needed to speak loudly to be heard by Hickey. Detective Heidle introduced himself and Captain Pittman and said that they were working on the case involving defendant. Detective Heidle told Hickey that he wanted consent to search the area where defendant was arrested, which he believed was the back bedroom. Hickey gave consent for Detective Heidle and Captain Pittman to come inside. The officers searched a back room, which was filled with boxes, had a mattress against the wall, and appeared to be a storage room, where they found a pair of tennis shoes just inside the door. Hickey told them that the tennis shoes belonged to defendant. The officers also found a ten-dollar bill in the back yard.

3

Around 1:00 p.m., after reviewing surveillance video at a gas station and eating lunch, Detective Heidle and Captain Pittman interviewed defendant at the Rhea County Sheriff's Department. Detective Heidle explained a rights waiver form to defendant, who signed the form before the interview. Detective Heidle wrote out defendant's statement, which defendant initialed and signed. Detective Heidle then took custody of two necklaces, which were on defendant's person when he was arrested.

After interviewing defendant, Detective Heidle returned to the apartment complex where law enforcement found the victim's car. Detective Heidle spoke with a female relative of defendant, who lived at the apartment complex, about gold one-dollar coins taken in the robbery. The woman told Detective Heidle that Hickey had one of the gold one-dollar coins. Detective Heidle and Captain Pittman returned to Hickey's house and Detective Heidle told Hickey that they would like consent to search his residence again, because they were told that he may have a gold one-dollar coin taken in the robbery. Hickey retrieved the coin and gave it to the officers, telling them that he found it in defendant's shoes.

Detective Heidle returned to Hickey's house a third time on November 26, 2018. Detective Heidle gave Hickey a consent-to-search form, on which Detective Heidle had filled in the address, owner's name, date, and time. Detective Heidle explained the form to Hickey and told Hickey that they wanted to search his home but that he had the right to refuse the search. When Detective Heidle asked Hickey to sign the consent form, Hickey said that he could not write. Detective Heidle then told Hickey to mark an "X" on the form

4

as his signature.  Detective Heidle and Officer Thomas Nelson also signed the form as witnesses.  Detective Heidle looked around the living room of the home but did not seize any evidence.  Hickey told Detective Heidle that he had a gold watch that defendant had given him.  Hickey gave the watch to Detective Heidle.

On December 19, 2018, Detective Heidle seized defendant's gray hoodie, worn at the time of his arrest, from the Hamilton County Sheriff's Department, pursuant to a search warrant.  While there, Detective Heidle and Detective Sledge interviewed defendant a second time.  Defendant again signed a rights waiver and gave a statement, which Detective Heidle wrote out and defendant initialed and signed.

## II. Standard of Review

The Court reviews *de novo* those portions of the R&R to which the defendant has objected.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).  Accordingly, the Court considers the R&R, the motion to suppress, the parties' underlying and supporting briefs, the defendant's objections, and the government's response to those objections, all in light of the applicable law.

## III. Analysis

Defendant raises three objections to the magistrate judge's R&R.  Specifically, he objects to the magistrate judge's findings that: (1) defendant did not have a legitimate expectation of privacy in his father's house to challenge the search at issue; (2) Hickey gave valid consent to search the home; and (3) even if the search was improper, only the

5

tennis shoes, ten-dollar bill, gold one-dollar coin, and gold watch are subject to suppression [Doc. 101, pp. 6–12].

### A. Expectation of Privacy

Defendant first objects to the magistrate judge's finding that he did not have a legitimate expectation of privacy in his father's house to challenge the search [Doc. 101, p. 6]. Defendant notes that the magistrate judge found the record to be devoid of evidence that he had a proprietary interest in the residence, lived at the residence, or was an overnight guest at the residence [*Id.* at 7]. However, defendant contends that this does not take into consideration that this was a warrantless search, and therefore, was presumptively unreasonable [*Id.*]. Defendant contends that the record in this case is developed enough to show that, at a minimum, he was welcome in the home and met the status as an overnight guest [*Id.*]. Specifically, he notes that he was arrested in the back room of the house, which is also where his tennis shoes were found, and there is no record that the officers asked Hickey if defendant was residing or staying at the house [*Id.* at 7–8]. Thus, defendant contends that the magistrate judge erred in concluding that he was not at least an overnight guest in the home, and therefore, held a legitimate expectation of privacy [*Id.* at 8].

The Fourth Amendment protects citizens from unreasonable searches and seizures by government officials. *See* U.S. Const. amend. IV. "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). Whether an individual

6

Case 3:19-cr-00055-TAV-HBG Document 109 Filed 10/06/21 Page 6 of 12 PageID #: 519

has a reasonable expectation of privacy is a two-part inquiry: (1) had the individual manifested a subjective expectation of privacy in the object of the challenged search; and (2) is society willing to recognize that expectation as reasonable. *Id.*

Of relevance, the Supreme Court has held that an individual's status as an overnight guest at a home is sufficient to show that he had a reasonable expectation of privacy in the home. *Minnesota v. Olson*, 495 U.S. 91, 96–100 (1990). Indeed, "[t]he Sixth Circuit has generously construed the Fourth Amendment as protecting nearly all overnight guests, even when the guest occupies a common area in the apartment that is not private from other residents." *United States v. Washington*, 573 F. 3d 279, 283 (6th Cir. 2009).

While there is no direct evidence as to whether or not defendant was an overnight guest in Hickey's home, where the relevant evidence was discovered, defendant's argument appears to be that the government failed to prove that he was not an overnight guest, and the magistrate judge merely speculated that defendant was not an overnight guest. However, "[a] defendant seeking to claim the protection of the Fourth Amendment bears the burden of proving that he had a reasonable expectation of privacy in the object of the search." *United States v. Wilson*, 984 F. Supp. 2d 676, 681 (E.D. Ky. 2013) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)).

The only evidence relating to defendant's potential status as an overnight guest presented at the suppression hearing was that: (1) the home was his father's house; (2) defendant was arrested at the house, in the back bedroom; (3) the back bedroom appeared to be used for storage, was filled with boxes, and had a mattress against the wall,

7

but did not appear to be a room where someone slept; and (4) a pair of tennis shoes belonging to defendant were seized from the back bedroom [Doc. 100, pp. 5–6]. Defendant appears to rely solely on the facts that he was arrested in the back bedroom and that his tennis shoes were located in the back bedroom as sufficient to establish that he was, at least, an overnight guest [Doc. 101, pp. 7–8]. But the Court cannot find that this evidence alone is sufficient to show that defendant was at least an overnight guest at the home. Rather, at most, this evidence establishes only that defendant had, at some point, been permitted to access the back bedroom and left personal belongings there. And, considering the testimony that the back bedroom did not appear to be a room where a person slept, and instead, appeared to be used for storage, the evidence of defendant's presence in, and storage of items in, the back bedroom carries even less weight in establishing that defendant was an overnight guest.

Accordingly, the Court agrees with Judge Guyton's conclusion that defendant has not established that he was an overnight guest in the residence, and therefore, defendant failed to meet his burden of establishing that he had a legitimate expectation of privacy in the residence. Defendant's objection on this ground is **OVERRULED**.

    B.    **Consent to Search**

Next, defendant objects to the magistrate judge's conclusion that, even if he had an expectation of privacy in Hickey's home, Hickey's consent to the search overcame the presumption that a warrantless search is unreasonable [Doc. 101, p. 8]. Defendant notes that Detective Heidle obtained consent to search from a near-deaf man, who he knew for

8

Case 3:19-cr-00055-TAV-HBG   Document 109   Filed 10/06/21   Page 8 of 12   PageID #: 521

but did not appear to be a room where someone slept; and (4) a pair of tennis shoes belonging to defendant were seized from the back bedroom [Doc. 100, pp. 5–6]. Defendant appears to rely solely on the facts that he was arrested in the back bedroom and that his tennis shoes were located in the back bedroom as sufficient to establish that he was, at least, an overnight guest [Doc. 101, pp. 7–8]. But the Court cannot find that this evidence alone is sufficient to show that defendant was at least an overnight guest at the home. Rather, at most, this evidence establishes only that defendant had, at some point, been permitted to access the back bedroom and left personal belongings there. And, considering the testimony that the back bedroom did not appear to be a room where a person slept, and instead, appeared to be used for storage, the evidence of defendant's presence in, and storage of items in, the back bedroom carries even less weight in establishing that defendant was an overnight guest.

Accordingly, the Court agrees with Judge Guyton's conclusion that defendant has not established that he was an overnight guest in the residence, and therefore, defendant failed to meet his burden of establishing that he had a legitimate expectation of privacy in the residence. Defendant's objection on this ground is **OVERRULED**.

    B.    **Consent to Search**

Next, defendant objects to the magistrate judge's conclusion that, even if he had an expectation of privacy in Hickey's home, Hickey's consent to the search overcame the presumption that a warrantless search is unreasonable [Doc. 101, p. 8]. Defendant notes that Detective Heidle obtained consent to search from a near-deaf man, who he knew for

certain could not write, and most likely could not read [*Id.* at 9]. Defendant argues that, viewing the totality of the circumstances, Hickey suffers from learning difficulties and little to no education [*Id.*]. Defendant states that there is "no question" that Hickey was "likely confused and felt he had no option but to permit Heidle and company to search" [*Id.* at 9–10]. Thus, defendant argues that the government has not met its burden of establishing that an exception to the warrant requirement applies, as Hickey's consent was mere acquiescence [*Id.* at 10].

It is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). When "a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Id.* at 222 (internal quotation marks omitted) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). Whether consent to a search is "voluntary" or is the "product of duress or correction . . . is a question of fact to be determined from the totality of the circumstances" and while knowledge of the right to refuse consent is a factor to consider, the government need not establish such knowledge to establish effective consent. *Id.* at 227.

Given the facts presented, the Court finds that the government has met its burden to establish that Hickey's consent to search was freely and voluntarily given. Detective Heidle admitted that, at the time of his first request to search, he was aware that Hickey

9

was partially deaf, and he would need to speak loudly to be heard. Despite this admission regarding Hickey's hearing, neither Detective Heidle nor any other witness indicated that law enforcement had any difficulty communicating their requests to search to Hickey, or that Hickey seemed confused at any point by the requests. In fact, the evidence presented indicates that officers were able to effectively communicate with Hickey about their interest in locating gold one-dollar coins taken in the robbery, and Hickey presented law enforcement with one such coin, claiming that he found it in defendant's shoes. Further, law enforcement was able to successfully communicate with Hickey about the consent-to-search form, and Hickey was then able to communicate his inability to write. Notably, the Court does not find that Hickey's inability to write (or potentially read) alone rendered his consent to the third search invalid when he was specifically orally informed that law enforcement was requesting to search his home and in the absence of any other indicator that Hickey did not understand the oral request.

The evidence presented here paints a picture of Hickey as entirely cooperative with law enforcement, who consented to searches of his home, knowing that law enforcement was searching for evidence of his son's potential involvement in criminal activity, and even offered evidence of a gold one-dollar coin and gold watch to law enforcement, along with information about receiving such items from defendant. Ultimately, there is no evidence that supports defendant's speculation that Hickey was "confused" and likely "felt he had no option but to permit" the searches [Doc. 101, pp. 9–10]. And the Court cannot conclude

10

Case 3:19-cr-00055-TAV-HBG Document 109 Filed 10/06/21 Page 10 of 12 PageID #: 523

was partially deaf, and he would need to speak loudly to be heard. Despite this admission regarding Hickey's hearing, neither Detective Heidle nor any other witness indicated that law enforcement had any difficulty communicating their requests to search to Hickey, or that Hickey seemed confused at any point by the requests. In fact, the evidence presented indicates that officers were able to effectively communicate with Hickey about their interest in locating gold one-dollar coins taken in the robbery, and Hickey presented law enforcement with one such coin, claiming that he found it in defendant's shoes. Further, law enforcement was able to successfully communicate with Hickey about the consent-to-search form, and Hickey was then able to communicate his inability to write. Notably, the Court does not find that Hickey's inability to write (or potentially read) alone rendered his consent to the third search invalid when he was specifically orally informed that law enforcement was requesting to search his home and in the absence of any other indicator that Hickey did not understand the oral request.

The evidence presented here paints a picture of Hickey as entirely cooperative with law enforcement, who consented to searches of his home, knowing that law enforcement was searching for evidence of his son's potential involvement in criminal activity, and even offered evidence of a gold one-dollar coin and gold watch to law enforcement, along with information about receiving such items from defendant. Ultimately, there is no evidence that supports defendant's speculation that Hickey was "confused" and likely "felt he had no option but to permit" the searches [Doc. 101, pp. 9–10]. And the Court cannot conclude

that defendant's speculation about Hickey's state of mind is sufficient to overcome the government's evidence that Hickey voluntarily consented to each of the searches.

Accordingly, the Court agrees with Judge Guyton's conclusion that the government has established that Hickey voluntarily consented to the searches of his home, which overcomes the presumption that a warrantless search is invalid. Defendant's objection on this ground is **OVERRULED**.

### C. Fruit of the "Illegal" Searches

Finally, defendant objects to the magistrate judge's conclusion that, even if Hickey did not voluntarily consent to the search of the residence, only the tennis shoes, ten-dollar bill, gold one-dollar coin, and gold watch are subject to suppression [Doc. 101, p. 10]. Defendant contends that his statements to law enforcement and the clothing seized pursuant to a search warrant must also be excluded [*Id.*].

Although the magistrate judge alternatively addressed what evidence would be subject to suppression if defendant had a legitimate expectation of privacy in Hickey's home and Hickey's consent to search was invalid [Doc. 100, pp. 22–24], the Court, having found for multiple reasons, explained supra, that no Fourth Amendment violation occurred and therefore, no suppression is warranted, finds no need to address the theoretical question of what evidence would be subject to exclusion if suppression were warranted. Accordingly, the Court will decline to address this objection, and will decline to adopt Section IV.C of the R&R, addressing this issue.

11

## IV. Conclusion

Accordingly, upon a careful and *de novo* review of the record and the law, the Court finds that the recommendations contained in the R&R are correct. Thus, defendant's objections [Doc. 101] are **OVERRULED**. The Court **ACCEPTS IN PART** the R&R [Doc. 100], which the exception of Section IV.C, and incorporates the accepted portions of the R&R into this Memorandum Opinion and Order. The Court hereby **DENIES** defendant's Motion to Suppress [Doc. 81].

IT IS SO ORDERED.

                                        s/ Thomas A. Varlan
                                        UNITED STATES DISTRICT JUDGE